UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
IN RE:

      SOUTH GLENS FALLS ENERGY, LLC          CASE NO. 06-60073

                    Debtor              Chapter 7
----------------------------------------------------------
JAMES C. COLLINS, in his official capacity
as Trustee of the Bankruptcy Estate of South
Glens Falls Energy, LLC

                  Plaintiff

        vs.

CAYUGA ENERGY, INC.              ADV. PRO. NO. 08-80011

                 Defendant
----------------------------------------------------------

APPEARANCES:

EDWARD Y. CROSSMORE, ESQ.
Attorney for Plaintiff
The Crossmore Law Office
115 West Green Street
Ithaca, New York 14850

LABOEUF, LAMB, GREENE & MACRAE, LLP      BENNETT G. YOUNG, ESQ.
Attorneys for Defendant                 Of Counsel
One Embarcadero Center
Suite 400
San Francisco, California 94111


Hon. Stephen D. Gerling, U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

2

Under consideration by the Court is a motion filed on behalf of Cayuga Energy, Inc. ("Cayuga") on September 29, 2008 by way of an Order to Show Cause.  Cayuga seeks summary judgment on Count I and Count VII set forth in a complaint ("Complaint") filed by James C. Collins as chapter 7 trustee ("Trustee") of South Glens Falls Energy, LLC (the "Debtor") on January 25, 2008.

The hearing on Cayuga's motion was held on October 28, 2008, at the Court's regular motion term in Utica, New York.  Following oral argument, the Court took the matter under submission. Upon consent of the parties and with the Court's approval, Cayuga was given until November 12, 2008, to file its supplemental brief.  In turn, the Trustee was given until November 19, 2008, to file and serve a response to Cayuga's supplemental brief.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(F), (H), and (O).

## FACTS

A voluntary petition ("Petition") pursuant to chapter 7 of the U.S. Bankruptcy Code, 11

---

[1] On November 21, 2008, Cayuga's counsel Paul S. Jasper, Esq., filed a letter (Dkt. No. 30) responding to the Trustee's Response, to which the Trustee's special counsel, Edward Crossmore, Esq., filed a letter in reply on December 31, 2008 (Dkt. No. 31).  As neither party has objected to these late submissions, the Court will consider them along with the other relevant documents filed in connection with Cayuga's motion.

3

U.S.C. §§ 101-1532 ("Code"), was filed on behalf of the Debtor on January 26, 2006.  Cayuga was

listed as an unsecured creditor with a claim of $11,968,380 "owed on loan" and a claim of $85,000

as "estimated January interest expense."  *See* Schedule F, attached to the Petition.  Also identified

in the Debtor's Statement of Financial Affairs are payments made to Cayuga identified as either

"interest" or "loan paydown" or "miscellaneous expense reimbursement."  Cayuga is also identified

as holding an 85% membership interest in the Debtor.  According to the "List of Equity Security

Holders," General Electric Capital Corporation holds the remaining 15% membership interest.

On January 25, 2008, the Trustee commenced an adversary proceeding by filing the

Complaint against Cayuga.  In his Complaint, the Trustee seeks to avoid and recover certain transfers

made by the Debtor to Cayuga within the year prior to the commencement of the case pursuant to

Code §§ 544(b), 547(b), 548,  and 550(a).  The Trustee alleges that Cayuga is an "insider" of the

Debtor within the meaning of Code § 101(31), specifically Code § 101(31)(B)(iii).

In his first cause of action based on Code § 547(b), the Trustee states that the Debtor made

certain transfers to Cayuga in the year prior to the commencement of the case, totaling "not less than

$5,733,030.50" at a time when the Debtor was insolvent.  Trustee's second and third causes of action

seeks to avoid alleged fraudulent transfers pursuant to Code §§ 548 and 544(b)(1).  The fourth cause

of action is also based on Code § 544(b)(1).  Trustee's fifth cause of action seeks to have Cayuga's

proof of claim in the amount of $5,733,030.50 disallowed based on allegations that the advances

made by Cayuga, "although in the form of loans, should be characterized as capital contributions to

the Debtor."  *See* ¶ 34 of the Complaint.  The Trustee's sixth cause of action asserts that the

transfers, or the value thereof, should be preserved for the benefit of the Debtor's estate pursuant to

Code § 551.  *See id.* at ¶ 38.  The Trustee's seventh and final cause of action seeks to recover the

4

avoidable transfers pursuant to Code § 550(a) in an amount not less that $5,733,030.50 plus interest.

On April 1, 2008, an answer to the Complaint was interposed on behalf of Cayuga asserting

various defenses, including that the transfers were made in payment of a debt incurred by the Debtor

in the ordinary course of business and that Cayuga had given new value following receipt of the

transfers.

With respect to Cayuga's motion for partial summary judgment on the first and seventh

causes of action, Cayuga sets forth the following facts:

Cayuga and the Debtor entered into a revolving credit agreement on January 14, 1999, under

which Cayuga agreed to supply cash to fund the Debtor's operations.[2]  In exchange for advances

made by Cayuga, the Debtor made monthly interest payments on any outstanding balance.

Repayments of principal were made as cash became available to the Debtor.

As of February 8, 2005, the outstanding principal balance pursuant to the credit agreement

was $9,457,080.  Between February 9, 2005 and January 26, 2006 (the "Petition Date"), the Debtor

made payments of principal to Cayuga of $4,654,000 and interest payments of $883,361.52 or a total

of $5,537,361.52.  During the same time period, Cayuga made advances of principal totaling

$7,165,300.  Two of the payments made by the Debtor on January 20, 2006 are identified as

$92,415.02 in interest and $1,498.10 as expense reimbursement, for a total of $93,913.12.  On the

same day, Cayuga made advances to the Debtor of $645,000 and $1,501.10.[3]  There is a question of

_____

[2]  The Trustee points out that the line of credit was capped at $2 million and the credit agreement was to terminate on November 30, 2001.  *See* Trustee's Opposition to Cayuga's Motion (Dkt. No. 21) at ¶¶ 10 and 13.

[3]  At the hearing on October 28, 2008, Cayuga's attorney, Bennett G. Young, Esq. (Young"), asserted that the only issue for trial is whether its new value defense to the preferential transfer of

5

fact whether the advance made by Cayuga actually preceded the expense reimbursement and interest

payment made by the Debtor on January 20, 2006.  According to the schedules attached to the

Petition, the principal balance on the credit agreement had increased to $11,968,380 as of January

26, 2006.

## ARGUMENTS

In support of its motion for partial summary judgment, it is Cayuga's position that even if

the Trustee is successful in avoiding the transfers by the Debtor, whether pursuant to Code §§ 544,

547 or 548, any recovery is barred by the "single satisfaction rule" set forth in Code § 550(d).  Under

Code § 550(d), Cayuga contends that because it has already repaid the Debtor an amount in excess

of the amounts sought to be recovered, it has a valid defense that prevents the Trustee from

recovering the transfers even if found to be preferential or fraudulent.

According to the Trustee, the "single satisfaction rule" is intended to limit a trustee to a single

recovery despite the fact that more than one entity may have been liable or more than one theory of

avoidance is found valid.  Cayuga takes issue with this argument, contending that the "single

satisfaction rule" also applies in the situation where "the subsequent transfers effectively repaid the

avoided transfers and, thus, allowing the avoided transfer to be recovered would amount to a

windfall to the estate inconsistent with Section 550's purpose 'to restore the estate to the financial

condition that would have existed had the transfer never occurred.'" *See* Cayuga's Supplemental

---

approximately $94,000 is valid.  Cayuga was not asserting the "single satisfaction rule" with respect
to that transfer, acknowledging that by making that argument it would be bringing back the "net
result rule," which was previously overruled.

6

Memorandum, filed November 12, 2008, at 2, quoting *Bakst v. Wetzel (In re Kingsley)*, 518 F.3d

874, 877 (11th Cir. 2008).  Under this theory, Cayuga seeks summary judgment on Count VII and

requests that the Trustee's requested recovery pursuant to Code § 550(a) of $5,639,117.38[4] be denied

as a matter of law.

It is the Trustee's position that "if Cayuga Energy's single satisfaction theory prevails, the

new value defense becomes irrelevant."  Trustee places particular emphasis on the fact that Cayuga,

as the one in control of the Debtor, had knowledge of the Debtor's financial straits and continued

to make advances, thereby forcing the Debtor into deeper insolvency.  The Trustee directs the Court

to the fact that the Debtor began its decline into insolvency beginning in 2004 at a time when it was

approximately $9 million in debt and its assets totaled approximately $9 million.  As of the Petition

Date, however, it was approximately $13 million in debt and had only approximately $2 million in

assets.

**DISCUSSION**

With respect to Cayuga's motion for summary judgment as to Count I, the Trustee concedes

that Cayuga has a valid defense, namely new value, to Count I, except as to the last transfer of

approximately $94,000 made by the Debtor to Cayuga on January 20, 2006, and that partial summary

judgment may be granted as to the balance of Count I.  The issue of the validity of the defense as

applied to the transfers of $93,313.12 on January 20, 2006, is more appropriately litigated at trial,

---

[4] This amount is the difference between the $5,733,030.50 alleged in the Complaint and the
transfers on January 20, 2006, totaling $93,913.12.

7

as both parties agree.

Thus, the balance of the Court's decision focuses on the applicability of Code § 550(d) under

the circumstances of this case.  Code § 550(a) provides that

> to the extent that a transfer is avoided under section 544, 545, 547, 548 . . . the trustee
> may recover, for the benefit of the estate, the property transferred, or, if the court so
> orders, the value of such property, from (1) the initial transferee of such transfer or
> the entity for whose benefit such transfer was made.

11 U.S.C. § 550(a)(1).

Code § 550(d) states that "[t]he trustee is entitled to only a single satisfaction under section

(a) of this section.  11 U.S.C. § 550(d).  It is this provision of the Code on which Cayuga relies in

arguing that because it advanced over $7.1 million to the Debtor during the one year prior to the

commencement of the case, the Trustee is without authority to recover the transfers made by the

Debtor to Cayuga during that same period totaling approximately $5.7 million even if successful in

his efforts to avoid the transfers as being fraudulent conveyances pursuant to Code § 548 and/or §

544(b).  This comports with the view that "[a]voidance does not automatically lead to recovery."

*In re Clarkston*, 387 B.R. 882, 890 (Bankr. S.D.Fla. 2008) (citation omitted); *see also In re Laines*,

352 B.R. 420, 425 (Bankr. E.D.Va. 2006) (stating that "[e]ffective avoidance by a trustee is a two-

step process"); *In re Morgan*, 276 B.R. 785, 790 (Bankr. N.D.Ohio 2001) (indicating the "the

concepts of 'avoidability' and 'recovery' are distinct concepts completely separate and independent

from one another").

As noted by the court in *In re Mako, Inc.*, 127 B.R. 471 (Bankr. E.D.Okl. 1991),

> Section 550(a) is a secondary cause of action <u>after</u> a properly appointed
> representative has prevailed pursuant to the avoidance sections of the Code. Section
> 550(a) stands as a recovery statute only and not as a primary avoidance basis for an
> action, as it will only <u>survive</u> when coupled with the transfer avoidance sections of

8

the Code.

*Id.* at 473 (emphasis supplied); *see also In re Pearson Indus., Inc.*, 178 B.R. 753, 759 (Bankr. C.D. Ill. 1995) (commenting that "[t]hey are conceptually different, and each of them is remedially significant. Recovery depends upon avoidance but does not exclusively define it. Rather, recovery is a remedy that supplements the remedial effect of avoidance per se"). It follows that this Court must first determine whether any of the transfers were fraudulent and, therefore, avoidable under Code § 548 or Code § 544(b) before they can be recovered by the Trustee pursuant to Code § 550(a). *See In re Phillips*, 379 B.R. 765, 780 (Bankr. N.D.Ill. 2007), citing *Mako*, 127 B.R. at 473.

Importantly to the matter under consideration is the fact that the Court is without authority to render an advisory opinion on a potential controversy. *See Matter of FedPak Systems, Inc.*, 80 F.3d 207, 211-12 (7th Cir. 1996) (indicating that "[a] bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions or to decide abstract, academic or hypothetical questions."). For the Court to address Cayuga's motion for summary judgment with respect to Code § 550(a) and (d), would be premature at this stage of the proceedings. Until there is a determination of whether the transfers are avoidable, there is no basis for the Court to address the extent of any recovery by the Debtor's estate. Accordingly, the Court will deny that portion of Cayuga's motion seeking summary judgment on Count VII of the Trustee's Complaint

Based on the foregoing, it is hereby

ORDERED that Cayuga's motion seeking partial summary judgment on Count I of the Trustee's Complaint pursuant to Code § 547 is granted, with the exception of the transfers of $93,313.12 made on June 20, 2006; and it is further

9

ORDERED that Cayuga's motion seeking partial summary judgment on Count VII based on

Code § 550(a) and § 550(d) is denied.

Dated at Utica, New York

this 30th day of January 2009

                                        /s/ Hon. Stephen D. Gerling
                                        STEPHEN D. GERLING
                                        U.S. Bankruptcy Judge